IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:07-155-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| JAVIS SHERARD MCKENZIE | ) | |
| _____ | ) | |

In March 2009, a jury convicted the defendant on all four counts pending against him which charged him with violations of federal narcotics laws. The sentencing Guidelines calculated pursuant to the United States Sentencing Commission Guideline Manual suggested a sentence of life. At sentencing, this court granted a defense motion for a downward departure and sentenced the defendant to 480 months incarceration. This court thereafter further reduced the defendant's sentence to 240 months based upon the remedial provisions of the First Step Act relating to crack cocaine offenders (ECF No. 2217).

The defendant now returns to this court with a *pro se* motion for his immediate release based upon his current medical conditions, coupled with the ongoing COVID-19 pandemic pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 2285).

The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant replied to the government's response.

1

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

## STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(I) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C.

§ 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (I) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at

3

230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

4

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

The government concedes that the defendant has exhausted his administrative remedies. Thus, the court will proceed to review the matter on the merits.

DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

5

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

## I.    *The Defendant's Medical Conditions*

In his motion (ECF No. 2285), the defendant contends that he suffers from the following ailments: hypertension, obesity, and arthritis.  He suggests that these conditions, some of which may be exacerbated by contracting the COVID-19 virus, necessitate his immediate release.  In a supplemental memorandum filed in response to the government's brief, the defendant suggests, without explaining why, that if sentenced today, his sentence would be substantially different from the one imposed by this court in 2009.

The government has responded in opposition, suggesting that the defendant's medical conditions are not as severe as he suggests.  The government points out that the defendant is fully vaccinated, and also suggests that even if the defendant can demonstrate extraordinary and compelling circumstances for consideration of release, this court should nevertheless exercise its discretion to deny relief based upon a careful examination of the 18 U.S.C. § 3553(a) factors.

As to the defendant's medical ailments, the government points out that the defendant's obesity, which it characterizes as "mild" does not afford a basis for relief.  The government

notes that obesity is a condition experienced by almost three-fourths of the United States population over the age of 20.

The Presentence Report (PSR) (ECF No. 1371) prepared in March 2009, indicates that the defendant stands 5'6" and weighed 200 pounds at that time.

The defendant contends that he presently weighs 215 pounds and with a height of 5'10", this translates to a Body Mass Index (BMI) of 30.8.   The CDC has issued guidance that adults at any age with obesity are at increased risk of severe illness from COVID-19.

As to the defendant's hypertension, the 2009 PSR does indicate that the defendant suffered from high blood pressure at the time of his sentencing.  Defendant's medical records are consistent with this claim.

Finally, the defendant's diagnosis of arthritis is of lesser importance.  Suffice it say, however, that taken as a whole, the defendant's obesity, hypertension, and arthritis lead this court to conclude that the defendant's medical conditions, coupled with the ongoing COVID-19 pandemic, show that the defendant has demonstrated an extraordinary and compelling reason for his release.   Even if the court were to make such a determination, however, the court's inquiry would then turn to an examination of the § 3553(a) sentencing factors, coupled with the defendant's post-sentencing conduct.

Under Fourth Circuit guidance, this court will now make an individualized assessment of the defendant's case, with specific attention to the 18 U.S.C. § 3553(a) factors.  This review will also consider the defendant's post-sentencing conduct while incarcerated, and

7

any other arguments advanced by the defendant in his memoranda.

The court will address the § 3553(a) factors in turn.

1.    *Nature and Circumstances of the Offense.* The defendant was one of 23 defendants named in an 87-count Third Superseding Indictment. The defendant was named in the following counts:

Count 1:    conspiracy to possess with intent to distribute and to distribute 50 grams or more of cocaine base (commonly known as "crack" cocaine), 5 kilograms or more of cocaine, both Schedule II controlled substances, and a quantity of marijuana, a Schedule I controlled substance, a violation of 21 U.S.C. § 846;

Counts 7–9:    use of a communication facility (telephone) in committing or in causing or facilitating the commission of a drug felony, a violation of 21 U.S.C. § 853(b); and

Count 79:    felon in possession of firearms and ammunition, a violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e).

The government filed an Information (ECF No. 230) pursuant to 21 U.S.C. § 851 notifying the defendant that he was subject to enhanced penalties of the drug charges in light of prior felony drug conviction in state court for possession of crack cocaine.[1]

As to Count 1, the jury found the amount of drugs attributable to the conspiracy and to the defendant individually was 50 grams or more of cocaine base and 5 kilograms or more of powder cocaine.

---

[1] This conviction was as follows: Original charge of Possession with intent to distribute crack reduced at guilty plea; Richland County General Sessions Court; Indictment # 2004-GS-40-5282; warrant #G837219; Columbia Police Department; date of offense 7/05/01; date of conviction 5/11/04; sentenced to 5 years and $350.00 fine suspended upon payment of $350.00 with 5 years probation.

Based upon the jury's findings, the defendant's Guidelines were calculated as follows: total offense level was 43; criminal history category III yielding a Guideline sentence of life. It should be noted that the defendant's life sentence was not required by a statutory provision.

The evidence produced at trial revealed that the defendant distributed 65.8 kilograms of cocaine powder and 34.76 kilograms of crack cocaine. During the execution of a search warrants, Agents found cash totaling $257,849. The evidence produced at trial showed that the defendant had at least 6 individuals either delivering drugs for him or storing drugs and/or money for him. The evidence also showed that the defendant possessed guns, one of the two weapons seized during the execution of the search warrant was .40 caliber pistol with a 30-round extended magazine. Both weapons were fully loaded and on top of a pile of clothes in the defendant's bedroom.

During trial, the defendant threatened two witnesses, Rodney Pettigrew and William Holly, while in the federal courthouse during his trial. Most significantly, the evidence showed that the defendant was a main drug supplier to the Gangsta Killa Bloods organized crime gang in the Midlands area of South Carolina.

Suffice it to say that the court considers the defendant's crimes at issue to be most serious in nature, fully deserving of a significant penalty. Moreover, as noted, the defendant has already been the beneficiary of two previous rulings of this court. One which reduced his sentence from life down to 480 months, and another which cut that sentence exactly in half down to 240 months.

The defendant filed a direct appeal of his conviction and sentence. The Fourth Circuit Court of Appeals affirmed the conviction with a mandate issued on October 15, 2010 (ECF No. 1564). See *United States v. McKenzie*, 396 Fed.Appx. 949, 2010 WL 3760238, *1–2 (4th Cir. 2010)(unpublished opinion).

The defendant has received credit for time served since January 29, 2007 of his 240-month sentence and is currently scheduled to be released in March 2024. He is presently housed at Petersburg Low Federal Correctional Institution.

2.   *History and Characteristics of the Defendant.*   The defendant was 30 years old at the time of the instant conviction and is now 44 years of age.

The defendant grew up in the Columbia, South Carolina area, the union of a mother who was disabled due to heart problems and a father who was unemployed. He experienced a difficult upbringing and began experimenting with drugs at a young age. At sentencing, he had been in a common law relationship with a female, age 30, since 1998. The couple has a 6 year old daughter.

The defendant has prior convictions for involuntary manslaughter (1996); possession of a firearm during the commission of a violent crime (1996); transporting an individual for immoral purposes (2000); possession of crack cocaine (2004); and miscellaneous misdemeanor convictions that do not merit mention in this order. The defendant's total criminal history points were 3, yielding a criminal history category of II.

10

*Post Sentencing Conduct*

Commendably, while incarcerated the defendant has attained his GED. He has also taken a variety of educational and vocational courses designed for rehabilitation back to society. He has worked at a variety of institutional assignments. He has had only one disciplinary infraction on his record for assault not resulting in serious injury

3. *Seriousness of the Crimes*. As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crimes as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in considering the present motion. This is perhaps one of the most important factors counseling against the defendant's immediate release.

7. *Need to Avoid Unwarranted Disparity*. Compared with the culpability of similarly situated defendants, the defendant's imposed sentence was and is in line with statutory factors.

The defendant was one of 22 co-defendants in his case. Of these 22 defendants sentenced in his case, McKenzie is the only defendant serving a sentence anywhere near 40 years. Of all the co-defendants, Martin Dwyer received the longest sentence of 262 months. His sentence was reduced to a sentence of time served by President Obama on May 4, 2017, with a presidential commutation. Hassan Richardson received a sentence of 20 years, but his sentence was reduced to 169 months based on a First Step Motion. Timothy Kelly was also sentenced to 240 months, but his sentence was reduced to 188 months based on a Rule 35 and reduced to a sentence of time served on December 15, 2015, based on guidelines Amendment 782. No other defendant received a sentence over 151 months. Almost all of McKenzie's co-defendants sentences were much shorter than 151 months and many saw their sentences reduced with either Rule 35 or guideline Amendments 750 and 782.

For this reason and others, the court determined in 2020 (ECF No. 2217) that the defendant's 40-year sentence for drug distribution (even though so called for by the properly calculated sentencing Guidelines in this case) was excessive as compared to the other defendants in this case. Accordingly, this court reduced the defendant's sentence to 240 months. The defendant's sentence is now in line with the other co-defendants.

12

## II.  *Additional Arguments Advanced by the Defendant*

In a supplemental memorandum submitted in May 2022, the defendant asserts, without citing any authority that "If I were sentenced today, I would not have the same sentence I had when I was sentenced 16 years ago."  He also avers that he does not have "the propensity to commit any more crimes, coupled with the passing of his mother which has strained him mentally and physically."  The court is unpersuaded by these arguments.  There is no authority for a further reduction in the defendant's sentence due to intervening changes in the law.  These have all been accommodated by this court in its earlier rulings slashing the defendant's sentence from life down to 480 months, and the down to 240 months.  As noted, the defendant was not sentenced to a mandatory minimum required by statute, but was instead sentenced under the Guideline provisions applicable at the time.

## III.  *Request for Home Confinement*

Alternatively, the defendant seeks to have this court direct the BOP to place the defendant in home confinement, however, this court is without authority to do so. He notes that he has an expected release date of March 8, 2024, and will become eligible for home confinement in September 2023.  He seeks release now so that he can serve the balance of his sentence on home confinement.

The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18  U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g).  The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this.  See CARES Act, Pub.

13

L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")

CONCLUSION

As noted earlier in this order, the court determines that the defendant has demonstrated an extraordinary and compelling reason for compassionate release relating to his medical conditions.  Even so, the defendant's release at this time is not appropriate in light of this court's investigation of the record and individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct discussed herein.

The record is clear that the defendant was a major supplier of significant amounts of crack cocaine and powder cocaine to street gang members for further distribution in the Midlands area of South Carolina.  The defendant obstructed justice by threatening witnesses at the federal courthouse prior to his jury trial.  He possessed firearms in connection with his crimes.  Despite being a convicted felon, he possessed firearms while selling huge quantities of illegal drugs to violent gang members.

This court's review of these factors points to the strong conclusion that the defendant's release at this time is not appropriate.

14

For the foregoing reasons, the motion (ECF No. 2285) is denied.

IT IS SO ORDERED.

July 7, 2022                                  Joseph F. Anderson, Jr.
Columbia, South Carolina                      United States District Judge